**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| AUDIOEYE, INC., <br><br>        Plaintiff, <br><br>      v. <br><br> ACCESSIBE LTD., <br><br>        Defendant. | Case No. 6:21-cv-726-ADA |

## FIRST AMENDED COMPLAINT

Plaintiff AudioEye, Inc. ("AudioEye") hereby complains of Defendant accessiBe Ltd. ("accessiBe"), and alleges as follows:

### I.  INTRODUCTION

1.      AudioEye provides software tools and services to make the internet more accessible to individuals with disabilities.  This includes tools to render website content accessible to those who rely on assistive technologies, such as screen readers.  AudioEye's innovative technology, developed over the course of a decade, has improved tens of thousands of websites.  Millions of individuals with disabilities in the United States and throughout the world benefit from AudioEye's removal of digital barriers that otherwise limit their access to web content.

2.      The United States Patent and Trademark Office has awarded AudioEye several patents on its proprietary technology.

3.      In 2018, accessiBe began marketing and selling a software product here in the United States that infringes AudioEye's patents.  This action seeks relief for the willful

infringement of AudioEye's patents by accessiBe, including in connection with several customers or resellers in this Judicial District.

## II.  <u>THE PARTIES</u>

4.      Plaintiff AudioEye is a Delaware corporation having its principal place of business at 5210 E. Williams Circle, Suite 750, Tucson, AZ 85711.  AudioEye is a publicly traded company and its common stock trades on the NASDAQ stock exchange.

5.      Defendant accessiBe is a company registered in Israel under Registration No. 51-585530-2, having a place of business at Ha-Khilazon St 6, Bnei Brak, Israel.

## III.  <u>JURISDICTION AND VENUE</u>

6.      This civil action includes claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, more particularly, 35 U.S.C. §§ 271 and 281.

7.      This Court has subject matter jurisdiction over the claims for patent infringement pursuant to at least 28 U.S.C. §§ 1331 and 1338(a).  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. 1332(a)(2) because AudioEye is a U.S. corporation and accessiBe is a company registered in Israel and the matter in controversy exceeds the value of $75,000, exclusive of interest and costs.

8.      This Court has personal jurisdiction over accessiBe because accessiBe has committed some of the acts of patent infringement complained of herein in this Judicial District. This includes the acts of patent infringement committed in connection with several customers or resellers with primary offices located in this Judicial District, including AutoNation Chevrolet of Waco, TX.

9.      Venue is proper in this Judicial District pursuant to at least 28 U.S.C. § 1391(c)(3) because accessiBe is a foreign corporation and subject to suit in any Judicial District.  *See also Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 709-10 (1972).

## IV.   STATEMENT OF FACTS

**A.      Background on Web Accessibility for Individuals with Disabilities**

10.      Millions of Americans have disabilities, such as vision, motor, cognitive, or hearing impairments, which affect their ability to access information and content through the internet.  Most websites, including critical destinations such as workplace applications, online commerce, and information resources, are not fully accessible to individuals with disabilities.

11.      For example, many individuals with sight impairments are not able to view the text and images on a webpage.  Instead, these individuals rely on a screen reader, which presents an audible description of the text and images.  This helps the user understand the content of the webpage and also enables the user to navigate through the site.

12.      Screen readers function by examining the code the computer browser uses to render text and images on a webpage. This code is often in the form of hypertext markup language (HTML) document object model (DOM), or simply, "DOM."  The screen reader reads the code and interprets it. This includes reading and announcing a description of the images that appear on a webpage.

13.      Sometimes, however, website designers neglect to include an image description that a screen reader can read and announce to a user with sight impairments.  This can be particularly common in online commerce websites that undergo frequent updates under time constraints.

14.     Other website shortcomings and issues render a webpage less accessible to individuals with disabilities.  In an effort to address these varied issues, domestic and international organizations have developed and promulgated rules and guidelines for website designers to implement to improve accessibility.  These standards include the Web Content Accessibility Guidelines (or "WCAG") published by an international internet standards organization.  The current version of the WCAG standards is WCAG 2.1.

15.     There are also several standards promulgated by groups and agencies in the United States.  For example, Section 508 of the Rehabilitation Act of 1973 has been amended to require Federal agencies to make electronic information technology accessible to individuals with disabilities, and government agencies have established standards to comply with these laws.  Also, the U.S. Justice Department has previously indicated that the Americans with Disabilities Act, or "ADA," applies to internet spaces.

16.     Industry best practices are to comply with current WCAG standards to provide equivalent access for all users and, as necessary, to ensure compliance with Section 508 and the ADA.

**B.      AudioEye's Novel and Patented Web Accessibility Technology**

17.     Over the course of many years, AudioEye developed software tools and processes that help website owners modify and improve their sites to render them more accessible to individuals with disabilities.  AudioEye's technology has rendered tens of thousands of websites more accessible to internet users all over the world.

18.     One of the enhancements provided by AudioEye's technology involves automatically supplementing a webpage DOM to include missing image descriptions.

AudioEye's automated corrections are used by a screen reader to read and announce the otherwise missing image descriptions to users relying on screen readers for audible output.

19.     AudioEye's technology includes many other automated processes for modifying a website to render it more accessible to individuals with disabilities.

20.     Beginning in 2016, AudioEye filed applications with the United States Patent & Trademark Office to protect its web accessibility technology.  AudioEye has been awarded several patents on its novel technology.

21.     AudioEye is the owner by assignment of all right, title, and interest in and to U.S. Patent No. 10,896,286, entitled "Modular Systems and Methods for Selectively Enabling Cloud-Based Assistive Technologies" ("the '286 patent"), which the United States Patent and Trademark Office lawfully and duly issued on January 19, 2021.  A true and correct copy of the '286 patent is included as Exhibit 1.

22.     AudioEye is the owner by assignment of all right, title, and interest in and to U.S. Patent No. 10,928,978, entitled "Modular Systems and Methods for Selectively Enabling Cloud-Based Assistive Technologies" ("the '978 patent"), which the United States Patent and Trademark Office lawfully and duly issued on February 23, 2021.  A true and correct copy of the '978 patent is included as Exhibit 2.

23.     AudioEye is the owner by assignment of all right, title, and interest in and to U.S. Patent No. 10,997,361 entitled "Modular Systems and Methods for Selectively Enabling Cloud-Based Assistive Technologies" ("the '361 patent"), which the United States Patent and Trademark Office lawfully and duly issued on May 4, 2021.  A true and correct copy of the '361 patent is included as Exhibit 3.

24.     AudioEye is the owner by assignment of all right, title, and interest in and to U.S. Patent No. 11,029,815 entitled "Modular Systems and Methods for Selectively Enabling Cloud-Based Assistive Technologies" ("the '815 patent"), which the United States Patent and Trademark Office lawfully and duly issued on June 8, 2021.  A true and correct copy of the '815 patent is included as Exhibit 4.

25.     AudioEye is the owner by assignment of all right, title, and interest in and to U.S. Patent No. 11,061,532 entitled "Modular Systems and Methods for Selectively Enabling Cloud-Based Assistive Technologies" ("the '532 patent"), which the United States Patent and Trademark Office lawfully and duly issued on July 13, 2021.  A true and correct copy of the '532 patent is included as Exhibit 5.

26.     AudioEye is the owner by assignment of all right, title, and interest in and to U.S. Patent No. 11,080,469 entitled "Modular Systems and Methods for Selectively Enabling Cloud-Based Assistive Technologies" ("the '469 patent"), which the United States Patent and Trademark Office lawfully and duly issued on August 3, 2021.  A true and correct copy of the '469 patent is included as Exhibit 6.

**C.     AccessiBe's Infringement of AudioEye's Patents**

27.     In 2018, accessiBe began offering and selling a software product here in the United States.  AccessiBe claims its product can be used to make websites more accessible to individuals with disabilities (the "infringing web accessibility tool").  AccessiBe's claims include the assertion that, like AudioEye's patented technology, its product can be used to automatically add missing image descriptions to a website's DOM.  And these descriptions can be used by screen readers to read and announce otherwise missing descriptions to users with sight impairments.

28.     As set forth in more detail below, accessiBe's product takes advantage of AudioEye's novel web accessibility technology and infringes AudioEye's patents.

29.     In addition to its acts of patent infringement, accessiBe also employs improper business practices.  Indeed, recently, the National Federation of the Blind, America's civil rights organization of blind people, issued a press release stating that "accessiBe currently engages in behavior that is harmful to the advancement of blind people in society. . . . The Board is deeply concerned that the company treats blind access technology experts shabbily and disrespectfully in private meetings and disparages the blind in the press and their other communications."

## V.  <u>FIRST CAUSE OF ACTION</u>

### (INFRINGEMENT OF U.S. PATENT NO. 10,896,286)

30.     AudioEye hereby realleges and incorporates by reference the allegations set forth in the above paragraphs.

31.     AccessiBe has infringed at least Claims 1 and 13 of the '286 patent under at least 35 U.S.C. § 271(a), (b), (c), and (g).

32.     For example, accessiBe has performed each of the limitations of Claims 1 and 13 of the '286 patent using a computer system in the United States.  Using its infringing web accessibility tool, accessiBe performs in the United States the recited steps of a computer implemented method of programmatically assigning a descriptive attribute to an untagged element on a web page to enable an audible description of the untagged element, as set forth in more detail in Exhibit 7.

33.     AccessiBe has knowledge of the '286 patent.  On July 13, 2021, before the complaint was filed, AudioEye sent a letter to accessiBe, identifying the '286 patent and explaining how accessiBe was infringing the patent.  AccessiBe also has knowledge of the '286 patent based on the filing of the complaint.

34.     Further, to the extent that AudioEye asserts only method claims of the '286 Patent, AudioEye is entitled to recover past damages and has complied with 35 U.S.C. § 287.

35.     AccessiBe has actively induced others to infringe at least Claims 1 and 13 of the '286 patent by marketing and selling to its customers, including customers in this Judicial District, its infringing web accessibility tool, knowing and intending that its customers use it in a manner that infringes at least Claims 1 and 13 of the '286 patent.  For example, using the demonstration videos mentioned in Exhibit 7, as well as other training materials, accessiBe

instructs and teaches its customers how to use its tool to infringe the '286 patent.  AccessiBe's acts constitute infringement of the '286 patent in violation of 35 U.S.C. § 271(b).

36.     AccessiBe's acts constitute contributory infringement of the '286 patent in violation of 35 U.S.C. § 271(c).  AccessiBe contributorily infringes because, for example, accessiBe offers to sell, sells, and/or imports into the United States its infringing web accessibility tool, which is not a staple article or commodity of commerce suitable for non-infringing use and which is used in performing the processes covered by at least Claims 1 and 13 of the '286 patent, and accessiBe knows its tool is especially made or adapted for use in an infringement of the '286 patent.

37.     AccessiBe's acts constitute infringement of the '286 patent in violation of 35 U.S.C. § 271(g).  AccessiBe imports into the United States or offers to sell to potential customers, sells to customers, and/or uses in the United States a product, such as a modified website, webpage, or HTML or DOM code for a website, that was made using its infringing web accessibility tool outside the United States (in, for example, Israel) by the processes covered by at least Claims 1 and 13 of the '286 patent.  AccessiBe states on its website, for example, that it has servers in the United States and Europe.

38.     AccessiBe's infringement of the '286 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '286 patent and its infringement thereof, thus acting in reckless disregard of AudioEye's patent rights.

39.     Because of accessiBe's infringement of the '286 patent, AudioEye has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

40.     Unless enjoined, accessiBe, and/or others acting on behalf of accessiBe, will continue their infringing acts, thereby causing additional irreparable injury to AudioEye for which there is no adequate remedy at law.

## VI.  SECOND CAUSE OF ACTION

### (INFRINGEMENT OF U.S. PATENT NO. 10,928,978)

41.     AudioEye hereby realleges and incorporates by reference the allegations set forth in the above paragraphs.

42.     AccessiBe has infringed at least Claim 1 of the '978 patent under at least 35 U.S.C. § 271(a), (b), (c). AccessiBe has directly infringed at least Claim 1 of the '978 patent through the manufacture, use, sale, offer for sale, and/or importation into the United States of its infringing web accessibility tool.  For example, accessiBe's infringing web accessibility tool includes all of the limitations of Claim 1 of the '978 patent as set forth in more detail in Exhibit 8.

43.     AccessiBe has knowledge of the '978 patent.  On July 13, 2021, before the complaint was filed, AudioEye sent a letter to accessiBe, identifying the '978 patent and explaining how accessiBe was infringing the patent.  AccessiBe also has knowledge of the '978 patent based on the filing of the complaint.

44.     AccessiBe has actively induced others to infringe at least Claim 1 of the '978 patent by marketing and selling to its customers, including customers in this Judicial District, its infringing web accessibility tool, knowing and intending that its customers use it in a manner that infringes at least Claim 1 of the '978 patent.  For example, using the demonstration videos mentioned in Exhibit 8, as well as other training materials, accessiBe instructs and teaches its

customers how to use its tool to infringe at least Claim 1 of the '978 patent.  AccessiBe's acts constitute infringement of the '978 patent in violation of 35 U.S.C. § 271(b).

45.     AccessiBe's acts constitute contributory infringement of the '978 patent in violation of 35 U.S.C. § 271(c).  AccessiBe contributorily infringes because, for example, accessiBe offers to sell, sells, and/or imports into the United States components of its infringing web accessibility tool, which are not a staple article or commodity of commerce suitable for non-infringing use and which accessiBe knows are especially made or adapted for use in an infringement of at least Claim 1 of the '978 patent.

46.     AccessiBe has also infringed at least Claim 11 of the '978 patent under at least 35 U.S.C. § 271(a), (b), (c), and (g).

47.     For example, accessiBe has performed each of the limitations of Claim 11 of the '978 patent using a computer system in the United States.  Using its infringing web accessibility tool, accessiBe performs in the United States the recited steps of a computer implemented method of programmatically assigning a descriptive attribute to an element on a web page to enable an audible description of the element, the web page having an associated document object model (DOM), as set forth in more detail in Exhibit 8.

48.     AccessiBe has actively induced others to infringe at least Claim 11 of the '978 patent by marketing and selling to its customers, including customers in this Judicial District, its infringing web accessibility tool, knowing and intending that its customers use it in a manner that infringes at least Claim 11 of the '978 patent.  For example, using the demonstration videos mentioned in Exhibit 8, as well as other training materials, accessiBe instructs and teaches its customers how to use its tool to infringe the '978 patent.  AccessiBe's acts constitute infringement of the '978 patent in violation of 35 U.S.C. § 271(b).

49.     AccessiBe's acts constitute contributory infringement of the '978 patent in violation of 35 U.S.C. § 271(c).  AccessiBe contributorily infringes because, for example, accessiBe offers to sell, sells, and/or imports into the United States its infringing web accessibility tool, which is not a staple article or commodity of commerce suitable for non-infringing use and which is used in performing the processes covered by at least Claim 11 of the '978 patent, and accessiBe knows its tool is especially made or adapted for use in an infringement of the '978 patent.

50.     AccessiBe's acts constitute infringement of the '978 patent in violation of 35 U.S.C. § 271(g).  AccessiBe imports into the United States or offers to sell to potential customers, sells to customers, and/or uses in the United States a product, such as a modified website, webpage, or HTML or DOM code for a website, that was made using its infringing web accessibility tool outside the United States (in, for example, Israel) by the processes covered by at least Claim 11 of the '978 patent.  AccessiBe states on its website, for example, that it has servers in the United States and Europe.

51.     AccessiBe's infringement of the '978 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '978 patent and its infringement thereof, thus acting in reckless disregard of AudioEye's patent rights.

52.     Because of accessiBe's infringement of the '978 patent, AudioEye has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

53.     Unless enjoined, accessiBe, and/or others acting on behalf of accessiBe, will continue their infringing acts, thereby causing additional irreparable injury to AudioEye for which there is no adequate remedy at law.

# VII.  **THIRD CAUSE OF ACTION**

## (INFRINGEMENT OF U.S. PATENT NO. 10,997,361)

54.     AudioEye hereby realleges and incorporates by reference the allegations set forth in the above paragraphs.

55.     AccessiBe has infringed at least Claims 1 and 11 of the '361 patent under at least 35 U.S.C. § 271(a), (b), (c), and (g).

56.     For example, accessiBe has performed each of the limitations of Claims 1 and 11 of the '361 patent using a computer system in the United States.  Using its infringing web accessibility tool, accessiBe performs in the United States the recited steps of a computer implemented method of programmatically assigning an accessible rich internet applications (ARIA) label to an image on a web page to provide an audible description of the image, the web page having an associated document object model (DOM), as set forth in more detail in Exhibit 9.

57.     AccessiBe has knowledge of the '361 patent.  On July 13, 2021, before the complaint was filed, AudioEye sent a letter to accessiBe, identifying the '361 patent and explaining how accessiBe was infringing the patent. AccessiBe also has knowledge of the '361 patent based on the filing of the complaint.

58.     AccessiBe has actively induced others to infringe at least Claims 1 and 11 of the '361 patent by marketing and selling to its customers, including customers in this Judicial District, its infringing web accessibility tool, knowing and intending that its customers use it in a manner that infringes at least Claims 1 and 11 of the '361 patent.  For example, using the demonstration videos mentioned in Exhibit 9, as well as other training materials, accessiBe instructs and teaches its customers how to use its tool to infringe at least Claims 1 and 11 of the

'361 patent.  AccessiBe's acts constitute infringement of the '361 patent in violation of 35 U.S.C. § 271(b).

59.     AccessiBe's acts constitute contributory infringement of the '361 patent in violation of 35 U.S.C. § 271(c).  AccessiBe contributorily infringes because, for example, accessiBe offers to sell, sells, and/or imports into the United States components of its infringing web accessibility tool, which are not a staple article or commodity of commerce suitable for non-infringing use and which accessiBe knows are especially made or adapted for use in an infringement of at least Claims 1 and 11 of the '361 patent.

60.     AccessiBe's acts constitute infringement of the '361 patent in violation of 35 U.S.C. § 271(g).  AccessiBe imports into the United States or offers to sell to potential customers, sells to customers, and/or uses in the United States a product, such as a modified website, webpage, or HTML or DOM code for a website, that was made using its infringing web accessibility tool outside the United States (in, for example, Israel) by the processes covered by at least Claims 1 and 11 of the '361 patent.

61.     AccessiBe's infringement of the '361 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '361 patent and its infringement thereof, thus acting in reckless disregard of AudioEye's patent rights.

62.     Because of accessiBe's infringement of the '361 patent, AudioEye has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

63.     Unless enjoined, accessiBe, and/or others acting on behalf of accessiBe, will continue their infringing acts, thereby causing additional irreparable injury to AudioEye for which there is no adequate remedy at law.

## VIII.  <u>FOURTH CAUSE OF ACTION</u>

## (INFRINGEMENT OF U.S. PATENT NO. 11,029,815)

64.    AudioEye hereby realleges and incorporates by reference the allegations set forth in the above paragraphs.

65.    AccessiBe has infringed at least Claim 11 of the '815 patent under at least 35 U.S.C. § 271(a), (b), and (c). AccessiBe has directly infringed at least Claim 11 of the '815 patent through the manufacture, use, sale, offer for sale, and/or importation into the United States of its infringing web accessibility tool.  For example, accessiBe's infringing web accessibility tool includes all of the limitations of Claim 11 of the '815 patent as set forth in more detail in Exhibit 10.

66.    AccessiBe has knowledge of the '815 patent.  On July 13, 2021, before the complaint was filed, AudioEye sent a letter to accessiBe, identifying the '815 patent and explaining how accessiBe was infringing the patent. AccessiBe also has knowledge of the '815 patent based on the filing of the complaint.

67.    AccessiBe has actively induced others to infringe at least Claim 11 of the '815 patent by marketing and selling to its customers, including customers in this Judicial District, its infringing web accessibility tool, knowing and intending that its customers use it in a manner that infringes at least Claim 11 of the '815 patent.  For example, using the demonstration videos mentioned in Exhibit 10, as well as other training materials, accessiBe instructs and teaches its customers how to use its tool to infringe at least Claim 11 of the '815 patent.  AccessiBe's acts constitute infringement of the '815 patent in violation of 35 U.S.C. § 271(b).

68.    AccessiBe's acts constitute contributory infringement of the '815 patent in violation of 35 U.S.C. § 271(c).  AccessiBe contributorily infringes because, for example,

accessiBe offers to sell, sells, and/or imports into the United States components of its infringing

web accessibility tool, which are not a staple article or commodity of commerce suitable for non-

infringing use and which accessiBe knows are especially made or adapted for use in an

infringement of at least Claim 11 of the '815 patent.

69.     AccessiBe has also infringed at least Claim 1 of the '815 patent under at least 35

U.S.C. § 271(a), (b), (c), and (g).

70.     For example, accessiBe has performed each of the limitations of Claim 1 of the

'815 patent using a computer system in the United States.  Using its infringing web accessibility

tool, accessiBe performs in the United States the recited steps of a computer implemented

method of programmatically assigning a descriptive HTML attribute to an untagged element on a

web page to enable an audible description of the untagged element, the web page having an

associated document object model (DOM), as set forth in more detail in Exhibit 10.

71.     Further, to the extent that AudioEye asserts only method claims of the '815

Patent, AudioEye is entitled to recover past damages and has complied with 35 U.S.C. § 287.

72.     AccessiBe has actively induced others to infringe at least Claim 1 of the '815

patent by marketing and selling to its customers, including customers in this Judicial District, its

infringing web accessibility tool, knowing and intending that its customers use it in a manner that

infringes at least Claim 1 of the '815 patent.  For example, using the demonstration videos

mentioned in Exhibit 10, as well as other training materials, accessiBe instructs and teaches its

customers how to use its tool to infringe the '815 patent.  AccessiBe's acts constitute

infringement of the '815 patent in violation of 35 U.S.C. § 271(b).

73.     AccessiBe's acts constitute contributory infringement of the '815 patent in

violation of 35 U.S.C. § 271(c).  AccessiBe contributorily infringes because, for example,

-16-

accessiBe offers to sell, sells, and/or imports into the United States its infringing web accessibility tool, which is not a staple article or commodity of commerce suitable for non-infringing use and which is used in performing the processes covered by at least Claim 1 of the '815 patent, and accessiBe knows its tool is especially made or adapted for use in an infringement of the '815 patent.

74.     AccessiBe's acts constitute infringement of the '815 patent in violation of 35 U.S.C. § 271(g).  AccessiBe imports into the United States or offers to sell to potential customers, sells to customers, and/or uses in the United States a product, such as a modified website, webpage, or HTML or DOM code for a website, that was made using its infringing web accessibility tool outside the United States (in, for example, Israel) by the processes covered by at least Claim 1 of the '815 patent.  AccessiBe states on its website, for example, that it has servers in the United States and Europe.

75.     AccessiBe's infringement of the '815 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '815 patent and its infringement thereof, thus acting in reckless disregard of AudioEye's patent rights.

76.     Because of accessiBe's infringement of the '815 patent, AudioEye has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

77.     Unless enjoined, accessiBe, and/or others acting on behalf of accessiBe, will continue their infringing acts, thereby causing additional irreparable injury to AudioEye for which there is no adequate remedy at law.

## IX.  FIFTH CAUSE OF ACTION

### (INFRINGEMENT OF U.S. PATENT NO. 11,061,532)

78.     AudioEye hereby realleges and incorporates by reference the allegations set forth in the above paragraphs.

79.     AccessiBe has infringed at least Claim 11 of the '532 patent under at least 35 U.S.C. § 271(a), (b), (c). AccessiBe has directly infringed at least Claim 11 of the '532 patent through the manufacture, use, sale, offer for sale, and/or importation into the United States of its infringing web accessibility tool.  For example, accessiBe's infringing web accessibility tool includes all of the limitations of Claim 11 of the '532 patent as set forth in more detail in Exhibit 11.

80.     AccessiBe has knowledge of the '532 patent.  On July 13, 2021, before the complaint was filed, AudioEye sent a letter to accessiBe, identifying the '532 patent and explaining how accessiBe was infringing the patent.  AccessiBe also has knowledge of the '532 patent based on the filing of the complaint.

81.     AccessiBe has actively induced others to infringe at least Claim 11 of the '532 patent by marketing and selling to its customers, including customers in this Judicial District, its infringing web accessibility tool, knowing and intending that its customers use it in a manner that infringes at least Claim 11 of the '532 patent.  For example, using the demonstration videos mentioned in Exhibit 11, as well as other training materials, accessiBe instructs and teaches its customers how to use its tool to infringe at least Claim 11 of the '532 patent.  AccessiBe's acts constitute infringement of the '532 patent in violation of 35 U.S.C. § 271(b).

82.     AccessiBe's acts constitute contributory infringement of the '532 patent in violation of 35 U.S.C. § 271(c).  AccessiBe contributorily infringes because, for example, accessiBe offers to sell, sells, and/or imports into the United States components of its infringing web accessibility tool, which are not a staple article or commodity of commerce suitable for non-

infringing use and which accessiBe knows are especially made or adapted for use in an infringement of at least Claim 11 of the '532 patent.

83.     AccessiBe has also infringed at least Claim 1 of the '532 patent under at least 35 U.S.C. § 271(a), (b), (c), and (g).

84.     For example, accessiBe has performed each of the limitations of Claim 1 of the '532 patent using a computer system in the United States.  Using its infringing web accessibility tool, accessiBe performs in the United States the recited steps of programmatically assigning a descriptive attribute to an untagged element on a web page to enable an audible description of the untagged element, the web page having an associated document object model (DOM), as set forth in more detail in Exhibit 11.

85.     AccessiBe has actively induced others to infringe at least Claim 1 of the '532 patent by marketing and selling to its customers, including customers in this Judicial District, its infringing web accessibility tool, knowing and intending that its customers use it in a manner that infringes at least Claim 1 of the '532 patent.  For example, using the demonstration videos mentioned in Exhibit 11, as well as other training materials, accessiBe instructs and teaches its customers how to use its tool to infringe the '532 patent.  AccessiBe's acts constitute infringement of the '532 patent in violation of 35 U.S.C. § 271(b).

86.     AccessiBe's acts constitute contributory infringement of the '532 patent in violation of 35 U.S.C. § 271(c).  AccessiBe contributorily infringes because, for example, accessiBe offers to sell, sells, and/or imports into the United States its infringing web accessibility tool, which is not a staple article or commodity of commerce suitable for non-infringing use and which is used in performing the processes covered by at least Claim 1 of the

'532 patent, and accessiBe knows its tool is especially made or adapted for use in an infringement of the '532 patent.

87.     AccessiBe's acts constitute infringement of the '532 patent in violation of 35 U.S.C. § 271(g).  AccessiBe imports into the United States or offers to sell to potential customers, sells to customers, and/or uses in the United States a product, such as a modified website, webpage, or HTML or DOM code for a website, that was made using its infringing web accessibility tool outside the United States (in, for example, Israel) by the processes covered by at least Claim 1 of the '532 patent.  AccessiBe states on its website, for example, that it has servers in the United States and Europe.

88.     AccessiBe's infringement of the '532 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '532 patent and its infringement thereof, thus acting in reckless disregard of AudioEye's patent rights.

89.     Because of accessiBe's infringement of the '532 patent, AudioEye has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

90.     Unless enjoined, accessiBe, and/or others acting on behalf of accessiBe, will continue their infringing acts, thereby causing additional irreparable injury to AudioEye for which there is no adequate remedy at law.

## X.  <u>SIXTH CAUSE OF ACTION</u>

### (INFRINGEMENT OF U.S. PATENT NO. 11,080,469)

91.     AudioEye hereby realleges and incorporates by reference the allegations set forth in the above paragraphs.

92.     AccessiBe has infringed at least Claim 11 of the '469 patent under at least 35 U.S.C. § 271(a), (b), (c). AccessiBe has directly infringed at least Claim 11 of the '469 patent through the manufacture, use, sale, offer for sale, and/or importation into the United States of its infringing web accessibility tool.  For example, accessiBe's infringing web accessibility tool includes all of the limitations of Claim 11 of the '469 patent as set forth in more detail in Exhibit 12.

93.     AccessiBe has knowledge of the '469 patent.  On August 3, 2021, before this First Amended Complaint was filed, AudioEye sent a letter to accessiBe, identifying the '469 patent and explaining how accessiBe was infringing the patent.  AccessiBe also has knowledge of the '469 patent based on the filing of the complaint.

94.     AccessiBe has actively induced others to infringe at least Claim 11 of the '469 patent by marketing and selling to its customers, including customers in this Judicial District, its infringing web accessibility tool, knowing and intending that its customers use it in a manner that infringes at least Claim 11 of the '469 patent.  For example, using the demonstration videos mentioned in Exhibit 12, as well as other training materials, accessiBe instructs and teaches its customers how to use its tool to infringe at least Claim 11 of the '469 patent.  AccessiBe's acts constitute infringement of the '469 patent in violation of 35 U.S.C. § 271(b).

95.     AccessiBe's acts constitute contributory infringement of the '469 patent in violation of 35 U.S.C. § 271(c).  AccessiBe contributorily infringes because, for example, accessiBe offers to sell, sells, and/or imports into the United States components of its infringing web accessibility tool, which are not a staple article or commodity of commerce suitable for non-infringing use and which accessiBe knows are especially made or adapted for use in an infringement of at least Claim 11 of the '469 patent.

96.     AccessiBe has also infringed at least Claim 1 of the '469 patent under at least 35 U.S.C. § 271(a), (b), (c), and (g).

97.     For example, accessiBe has performed each of the limitations of Claim 1 of the '469 patent using a computer system in the United States.  Using its infringing web accessibility tool, accessiBe performs in the United States the recited steps of a computer implemented method of programmatically assigning a descriptive attribute to an untagged element in a web page to enable an audible description of the untagged element, the web page having an associated document object model (DOM), as set forth in more detail in Exhibit 12.

98.     AccessiBe has actively induced others to infringe at least Claim 1 of the ' 469 patent by marketing and selling to its customers, including customers in this Judicial District, its infringing web accessibility tool, knowing and intending that its customers use it in a manner that infringes at least Claim 1 of the '469 patent.  For example, using the demonstration videos mentioned in Exhibit 12, as well as other training materials, accessiBe instructs and teaches its customers how to use its tool to infringe the '469 patent.  AccessiBe's acts constitute infringement of the '469 patent in violation of 35 U.S.C. § 271(b).

99.     AccessiBe's acts constitute contributory infringement of the '469 patent in violation of 35 U.S.C. § 271(c).  AccessiBe contributorily infringes because, for example, accessiBe offers to sell, sells, and/or imports into the United States its infringing web accessibility tool, which is not a staple article or commodity of commerce suitable for non-infringing use and which is used in performing the processes covered by at least Claim 1 of the '469 patent, and accessiBe knows its tool is especially made or adapted for use in an infringement of the '469 patent.

100.    AccessiBe's acts constitute infringement of the '469 patent in violation of 35 U.S.C. § 271(g).  AccessiBe imports into the United States or offers to sell to potential customers, sells to customers, and/or uses in the United States a product, such as a modified website, webpage, or HTML or DOM code for a website, that was made using its infringing web accessibility tool outside the United States (in, for example, Israel) by the processes covered by at least Claim 1 of the '469 patent.  AccessiBe states on its website, for example, that it has servers in the United States and Europe.

101.    AccessiBe's infringement of the '469 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '469 patent and its infringement thereof, thus acting in reckless disregard of AudioEye's patent rights.

102.    Because of accessiBe's infringement of the '469 patent, AudioEye has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

103.    Unless enjoined, accessiBe, and/or others acting on behalf of accessiBe, will continue their infringing acts, thereby causing additional irreparable injury to AudioEye for which there is no adequate remedy at law.

## XI.  JURY DEMAND

104.    AudioEye hereby demands a jury on all issues so triable.

## XII.  PRAYER FOR RELIEF

**WHEREFORE**, AudioEye prays for judgment in its favor against accessiBe for the following relief:

A.       Pursuant to 35 U.S.C. § 271, a determination that accessiBe and its officers, agents, servants, employees, attorneys, and all others in active concert and/or

participation with it have infringed literally and/or under the doctrine of equivalents each of the '286, '978, '361, '815, '532, and '469 patents;

B.  Pursuant to 35 U.S.C. § 283, an injunction enjoining accessiBe and its officers, agents, servants, employees, attorneys, and all others in active concert and/or participation with it from infringing the '286, '978, '361, '815, '532, and '469 patents;

C.  Pursuant to 35 U.S.C. § 284, an award compensating AudioEye for accessiBe's infringement of the '286, '978, '361, '815, '532, and '469 patents;

D.  Pursuant to 35 U.S.C. § 284, an award increasing damages up to three times the amount found or assessed by the jury for accessiBe's infringement of the '286, '978, '361, '815, '532, and '469 patents in view of the willful and deliberate nature of the infringement;

E.  Pursuant to 35 U.S.C. § 285, a finding that this is an exceptional case, and an award of AudioEye's reasonable attorneys' fees and non-taxable costs;

F.  Any other relief that this Court may deem just.

August 4, 2021                              Respectfully submitted,

                                            /s/ *Brian C. Nash*
                                            Brian C. Nash
                                            Texas Bar No. 24051103
                                            Austin M. Schnell
                                            Texas Bar No. 24095985
                                            Pillsbury Winthrop Shaw Pittman LLP
                                            401 Congress Ave., Suite 1700
                                            Austin, Texas 78701
                                            T: (512) 580-9600 F: (512) 580-9601
                                            E: brian.nash@pillsburylaw.com
                                            E: austin.schnell@pillsburylaw.com

                                            Steven Jensen (pro hac vice to be filed)
                                            CA Bar No. 149894

Brian Horne (pro hac vice to be filed)
CA Bar No. 205621
Jared Bunker (pro hac vice to be filed)
CA Bar No. 246946
Knobbe Martens
2040 Main Street
Irvine, CA 92614
T: (949) 760-0404
E: jared.bunker@knobbe.com
E: brian.horne@knobbe.com
E: steve.jensen@knobbe.com

*Attorneys for Plaintiff AudioEye, Inc.*